**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 22, 2021

Blake A. Bennett, Esquire
Cooch and Taylor, P.A.
1007 N. Orange Street, Suite 1120
P.O. Box 1680
Wilmington, DE  19899

Kurt M. Heyman, Esquire
Gillian L. Andrews, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE  19801

Gregory V. Varallo, Esquire
Bernstein Litowitz Berger &
 Grossmann LLP
500 Delaware Avenue, Suite 901
Wilmington, DE  19801

Brian C. Ralston, Esquire
Aaron R. Sims, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899

Re:     *Deborah Pettry and Gail Friedt v. Gilead Sciences, Inc.*,
          C.A. No. 2020-0132-KSJM;
          *Richard C. Collins v. Gilead Sciences, Inc.*,
          C.A. No. 2020-0138-KSJM;
          *Hollywood Police Officers' Retirement System v. Gilead*,
          *Sciences, Inc.*, C.A. No. 2020-0155-KSJM;
          *Anthony Ramirez v. Gilead Sciences, Inc.*,
          C.A. No. 2020-0173-KSJM

Dear Counsel:

        This letter resolves Plaintiffs' Motion for an Award of Attorneys' Fees and

Expenses.  The Post-Trial Memorandum Opinion in this matter (the "Memorandum

Opinion") supplies the factual background germane to this letter decision.[1]

---

[1] *See* C.A. No. 2020-0173-KSJM, Docket ("Dkt.") 108 ("Mem. Op.").  Defined terms used
in this Order have the same meaning ascribed to them in the Memorandum Opinion.

Delaware courts follow the American Rule that each party is expected to pay its own attorneys' fees regardless of the outcome of the litigation. This court, however, retains the ability to shift fees when faced with vexatious litigation conduct "to deter abusive litigation and to protect the integrity of the judicial process."[2] This court may award fees "in its discretion . . . 'where equity requires.'"[3] This court has used fee-shifting as "a method for reducing and appropriately allocating the costs of vexatious behavior sufficiently serious that justice requires such mitigation."[4] This exception is frequently referred to as the "bad faith" exception to the American rule, although the exception itself is perhaps more expansive, and there is "no single, comprehensive definition of 'bad faith' that will justify a fee-shifting award."[5] To capture the sorts of vexatious activities that the bad-faith exception is intended to address, this court employs the "glaring egregiousness" standard.[6]

---

[2] *Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005).

[3] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 687 (Del. 2013) (quoting *Burge v. Fidelity Bond & Mortg. Co.*, 648 A.2d 414, 421 (Del. 1994)).

[4] *Martin v. Harbor Diversified, Inc.*, 2020 WL 568971, at *1 (Del. Ch. Feb. 5, 2020).

[5] *Montgomery Cellular*, 880 A.2d at 227.

[6] *See, e.g.*, *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 879 (Del. 2015) (affirming this court's determination to shift fees under the "glaring egregiousness" standard); *Isr. Disc. Bank of N.Y. v. First State Depository Co.*, 2013 WL 2326875, at *28–29 (Del. Ch. May 29, 2013) (applying the "glaring egregiousness" standard in assessing potential fee shifting); *eBay Domestic Hldgs., Inc. v. Newmark*, 16 A.3d 1, 47–48 (Del. Ch. 2010) (same); *In re Charles Wm. Smith Tr.*, 1999 WL 596274, at *2–4 (Del. Ch. July 23, 1999) (same).

Delaware courts have shifted fees for glaringly egregious conduct, such as forcing a plaintiff to file suit to "secure a clearly defined and established right,"[7] "unnecessarily prolong[ing] or delay[ing] litigation, falsif[ying] records, or knowingly assert[ing] frivolous claims."[8]

Although there is a fine line between glaringly egregious conduct and an aggressive litigation position, Gilead crossed the line in this case.

After Gilead declined to produce a single document to any of the five Plaintiffs thereby forcing them to commence litigation, Gilead took a series of positions during litigation that, when viewed collectively, were glaringly egregious.

---

[7] *McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000) ("If McGowan had a clearly established legal right to inspect Empress's books and records, and Empress's conduct forced him to bring this action to secure that right, then the defendant can be found to have acted in bad faith and be ordered to pay the plaintiff's legal fees and expenses."); *accord. Donnelly v. Keryx Biopharmaceuticals, Inc.*, 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019); *Norman v. US MobilComm, Inc.*, 2006 WL 1229115, at *4 (Del. Ch. Apr. 28, 2006).

[8] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 2016 WL 703852, at *3 (Del. Super. Feb. 17, 2016) (quoting *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)); *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 2013 WL 5152295, at *10 (Del. Ch. Sept. 16, 2013) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)); *In re SS & C Techs., Inc. S'holders Litig.*, 948 A.2d 1140, 1150 (Del. Ch. 2008) (quoting *Johnston*, 720 A.2d at 546).

Gilead argued that Plaintiffs had not met the credible basis requirement to investigate wrongdoing—a requirement that imposes "the lowest possible burden of proof"[9]—even though Plaintiffs had ample support for their proposition.[10]

Gilead claimed that Plaintiffs were not entitled to inspection because any follow-on claims challenging the wrongdoing at issue would be dismissed, ignoring that "[t]he stockholder need not demonstrate that the alleged mismanagement or wrongdoing is actionable" in order to be entitled to inspection.[11] In developing this argument, Gilead also misrepresented the record.[12]

Gilead pursued at trial a *Wilkinson* defense as to each Plaintiff, although deposition testimony revealed that all Plaintiffs "were knowledgeable about the basis for their Demands" and requested the books and records as an exercise of their statutory rights as stockholders.[13]

---

[9] *Seinfeld v. Verizon Comm'ns, Inc.*, 909 A.2d 117, 123 (Del. 2006).

[10] *See* Mem. Op. at 25–33 (explaining that Plaintiffs' support included an ongoing, multi-billion dollar antitrust lawsuit, including a 134-page complaint; a motion to dismiss that lawsuit with 38 exhibits; a decision of the federal court denying the motion to dismiss; pleadings accompanying mass tort claims by over 15,000 plaintiffs in multiple jurisdictions; a lawsuit by the DOJ alleging patent infringement and a subsequent ruling by the Patent Trial and Appeals Board; DOJ investigations into False Claims Act violations, including accompanying subpoenas and a related federal litigation; and congressional testimony).

[11] *See AmerisourceBergen Co. v. Lebanon Cnty. Emps. Ret. Fund*, 243 A.3d 417, 437 (Del. 2020).

[12] Mem. Op. at 45–47 (detailing Gilead's various misrepresentations of the record).

[13] *Id.* at 34.

Gilead took aggressive positions in discovery, although the "purpose and nature of Section 220 proceedings" are better served when "managed expeditiously."[14]

Perhaps one of these positions, standing alone, could be forgiven as merely an aggressive defense. Perhaps not. I do not need to make that difficult call because, collectively, these positions rise to the level of glaringly egregious litigation conduct.

While Gilead admits that it vigorously defended the lawsuit, it contends that it did so on the "good-faith belief that the case law and factual record developed through discovery supported its arguments."[15] Gilead further argues that to obtain fee shifting, Plaintiffs "must show by *clear evidence* that Gilead acted in *subjective* bad faith that rose to the level of *glaring egregiousness*."[16]

Gilead overstates the law on this point. Although Delaware courts have described the bad faith standard as "subjective," this court has shifted fees based on litigation conduct without launching a fact-intensive investigation into the offending party's state of mind.[17] Moreover, where this court shifts fees to curb and correct for overly vexatious litigation behavior, a showing of glaringly egregious litigation conduct is enough. To the extent that

---

[14] *See AmerisourceBergen*, 243 A.3d at 437.

[15] Dkt. 121 ¶ 2

[16] *Id.* (emphasis in original).

[17] *See, e.g.*, *McGowan*, 791 A.2d at 4 (holding that the defendant "acted in subjective bad faith by failing to honor its promises to produce its books and records, and later by opposing [the plaintiff's] § 220 action to enforce his legal right to inspect those books and records," despite there being no record of the defendant's state of mind).

a finding of bad faith is necessary, then the court can infer bad faith based on the litigation conduct alone. In this case, such an inference is appropriate.

For the foregoing reasons, Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses is GRANTED.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc: All counsel of record (by *File & ServeXpress*)